# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| JANMARIE MAZZONE, | \* | No. 22-1891V |
| | \* | |
| Petitioner, | \* | |
| | \* | Special Master Christian J. Moran |
| v. | \* | |
| | \* | Filed: June 25, 2026 |
| SECRETARY OF HEALTH | \* | |
| AND HUMAN SERVICES, | \* | |
| | \* | |
| Respondent. | \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

<u>Jessi Carin Huff</u>, Maglio Christopher & Toale, Seattle, WA, for petitioner;
<u>James Vincent Lopez</u>, United States Dep't of Justice, Washington, DC, for respondent.

### <u>PUBLISHED DECISION AWARDING ATTORNEYS' FEES AND COSTS</u>[1]

Janmarie Mazzone alleged that an influenza vaccine she received on November 30, 2021, caused her to develop Guillain-Barré syndrome ("GBS"). After filing medical records and receiving the Secretary's assessment that she was not entitled to compensation, Ms. Mazzone dismissed her case voluntarily. Entitlement Decision, issued July 22, 2024, 2024 WL 3825581.

Ms. Mazzone is now seeking an award of attorneys' fees and costs. The Secretary opposes on the ground that Ms. Mazzone has not established a prerequisite for a discretionary award of attorneys' fees, namely reasonable basis. For the reasons explained below, Ms. Mazzone has established a reasonable basis for her claim. Thus, she is eligible for a reasonable award of attorneys' fees and costs. For Ms. Mazzone, a reasonable amount of attorneys' fees and costs is **$74,789.83**.

---

[1] Because this decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). This means the decision will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), the parties have 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. Any changes will appear in the document posted on the website.

## I.        Events in Ms. Mazzone's Medical History[2]

Ms. Mazzone was born in 1960.  Exhibit 5 at 541.  She alleges she did not have any history of neurologic disease before the allegedly causal vaccination.  Pet., filed Dec. 12, 2022, ¶ 7.  The Secretary, likewise, did not assert that any medical problem before the vaccination that may have contributed to Ms. Mazzone developing GBS, which occurred after her vaccination.  See Resp't's Rep't, filed Dec. 7, 2023, at 6-9.

Although Ms. Mazzone technically alleged as an alternative cause of action, that the flu vaccine significantly aggravated an underlying neurologic problem, this pleading lacks any factual support.  Thus, this decision does not further discuss a cause of action based upon significant aggravation.

Relevant medical history begins in November 2021, when she had developed renal calculi.  She was hospitalized at Kaiser for treatment of these renal calculi.  During the hospitalization on November 27, 2021, she tested negative for COVID-19.  Exhibit 5 at 406.  She received the allegedly causal flu vaccine on November 30, 2021.  Exhibit 5 at 424.  She left the hospital that day.  Id. at 365.

On December 3, 2021, Ms. Mazzone called her primary care physician, Nisha Jadhaw, and reported "having symptoms of congestion, rhinitis, headache, low grade temp, chills, [and a scratchy] throat."  Exhibit 1 at 735.  Dr. Jadhaw suspected her symptoms had a "likely viral etiology."  Id.

On December 26, 2021, Ms. Mazzone began to develop fever, fatigue, shortness of breath, cough, nausea, and vomiting.  Using an at-home test, Ms. Mazzone was positive for COVID-19.  Exhibit 5 at 541, 546, 578.  Ms. Mazzone had not been vaccinated for COVID-19.  Id.

Ms. Mazzone's infection with COVID-19 worsened.  On January 5, 2022, Ms. Mazzone went to a hospital's emergency department, reporting she "became increasingly weak over the past 24 hours, fell last night while trying to go to bathroom, and [was] barely able to stand up."  Exhibit 5 at 572.  Her oxygen saturation in triage was 85% (normal: 95%-100%).  Id. at 546.  Ms. Mazzone was diagnosed with "sepsis with acute respiratory failure secondary to COVID pneumonia."  Id. at 578.  She was treated with oxygen, bronchodilators, corticosteroids, anti-viral medication, and a blood thinner.  Id. at 579.  Her blood culture was positive for gram positive cocci bacteria, in clusters, and she was treated with IV antibiotics.  Id. at 591-592, 594.  Ms. Mazzone was hospitalized for seven days and discharged on January 12, 2022, in stable condition.  Id. at 579-81.  At discharge, she was prescribed an oxygen concentrator for home use and additional corticosteroids.  Id.

On January 17, 2022, forty-eight days after the flu vaccination, Ms. Mazzone was taken to the Kaiser emergency department ("ED") via ambulance for "[right] back pain and chest pain that began th[at] evening."  Exhibit 5 at 496.  Ms. Mazzone reported "she was doing fine

---

[2] The relevant parts of Ms. Mazzone's medical history are relatively few.  Thus, this decision sets them out in abbreviated fashion.  However, all medical records have been considered.

2

otherwise since being discharged" from her hospitalization for COVID-19.  Id.  On exam, Ms. Mazzone had a fever and tenderness of her chest wall.  Id. at 497.  She had no focal weakness or paresthesias.  Id. at 498.  Her white blood cell ("WBC") count was abnormal.  Id. at 499.  Ms. Mazzone was treated with oxygen and pain medications and discharged home the next day in stable condition.  Id. at 500-01.

On January 25, 2022, fifty-six days after vaccination, Ms. Mazzone was taken by ambulance to the Kaiser ED for back pain, nausea, and vomiting.  Exhibit 5 at 899-904.  She reported having vomited three times since the prior night.  Exhibit 6 at 6.  In the ED, the physical exam was unremarkable.  Exhibit 5 at 901.  She was admitted to the hospital.

In the hospital, she underwent various tests. A nasal swab test collected the morning of January 26, 2022, was positive for COVID-19, and negative for flu and RSV.  Id. at 936, 974.

Later on January 26, 2022, Ms. Mazzone reported numbness and tingling in her hands and ankles.  Exhibit 5 at 911.  She also reported that she had been "[a]ble to walk around [her] house w[ith out] problem until two days ago when she developed paresthesia, tingling in her feet and then leg weakness."  Id. at 981.  Upon an examination, the doctor determined that she had minimal to no deep tendon reflexes in her upper extremities as well as bilateral weakness in both upper and lower extremities.  The doctor ordered additional tests as well as a consultation with a neurologist.

A lumbar puncture was performed on January 26, 2022.  The results showed elevated protein, albumin, and glucose levels.  Exhibit 5 at 1117.

Neurologist John Neely, M.D.'s assessment was that Ms. Mazzone had "post-COVID [GBS], presenting with low back pain on 1/25 and weakness in her limbs, worse initially in her lower limbs, and numbness in her legs and hands beginning on 1/26," and ordered IVIG.  Id. at 988.

Infectious disease specialist Zaina El-Isa, M.D., examined Ms. Mazzone and noted:

> 61 y[ea]r old female presented w[ith] neurological symptoms,
> COVID 1 month ago, presented with paresthesia and weakness
> started in lower limbs and associated with shortness of breath but
> no hypoxia.  [Computed tomography angiography of the] chest
> negative for [pulmonary embolism].  Areflexia on physical exam,
> GBS in differential, reported 1 to 4 weeks post Covid infection
> with literature review, time lag of 1-4 weeks and may be
> attributable to the "immune mechanism of molecular mimicry."

Id. at 989.

In this litigation, the parties agree that Ms. Mazzone suffered from Guillain-Barré syndrome.  See Pet. ¶ 39; Resp't's Rep't at 6.  The parties, however, dispute when Ms. Mazzone first manifested symptoms or signs of the Guillain-Barré syndrome.

Details about how GBS affected Ms. Mazzone do not inform the question of whether reasonable basis supports her claim that the flu vaccine caused her GBS.  It is sufficient to note

3

that Ms. Mazzone experienced a severe case of GBS and her recovery, unfortunately, has not been complete.  For example, she required a ventilator and a feeding tube.  For additional details about the Ms. Mazzone's course of GBS, <u>see</u> Pet. ¶¶ 24-39; Resp't's Rep. at 4-6.

When doctors were caring for Ms. Mazzone, they sometimes commented upon the potential cause for her GBS.  On May 9, 2022, as part of a telehealth appointment, Ms. Mazzone's primary care doctor (Nisha Jadhaw) stated that her history included "GBS possibly 2/2 [secondary to] flu shot."  Exhibit 1 at 893.  On July 20, 2023, her neurologist, Dr. Neely, stated that Ms. Mazzone had a "history of [GBS] that occurred in 1/2022 likely triggered by COVID."  Exhibit 11 at 553.

## II.   <u>Procedural History</u>

### A.   **Before the Petition was Filed**

Ms. Mazzone first contacted the law firm that is representing her on May 10, 2022.  Exhibit 17.[3]  About two weeks later, a paralegal spent approximately three hours conducting a "thorough review of over 900 pages of client provided medical records."  Entry for May 26, 2022.  It is likely that these 900 pages are records from Kaiser.  About one week later, the attorney who represents Ms. Mazzone, Jessica Huff, spent about three hours reviewing "voluminous medical records" as well as other tasks.  Entry for May 31, 2022.

Attorney Huff spoke with Ms. Mazzone for about one hour on June 1, 2022.  Ms. Huff gave Ms. Mazzone the firm's "initial assessment of the hurdles and set expectations about retention and expectations for the longevity of cases within the program."  Over the few days, Ms. Mazzone retained the law firm.

Paralegals ordered and tracked down medical records.  By the end of October 2022, a paralegal spent more than 15 hours reviewing records from Kaiser.  On November 10, 2022, a paralegal began drafting the petition.  More medical records were collected.  The petition was finalized and filed on December 22, 2022.  The attorney who drafted the petition was Elizabeth Abramson.

### B.   **Petition**

Because the operative part of the Vaccine Act (42 U.S.C. § 300aa–15(e)) links "reasonable basis" to the "claim for which the petition was brought," a close review of the petition is consistent with the statute.  The petition's preamble lacks specificity.  In relevant part, the preamble states that Ms. Mazzone seeks compensation "for injuries resulting from adverse effects of a vaccination or vaccinations."  The petition mentions Ms. Mazzone was hospitalized in early January 2022, but *does not* allege that she was diagnosed with or suspected of having GBS at that time.  <u>See</u> Pet. ¶¶ 16-17.  The petition mentions Ms. Mazzone again sought hospital treatment for back pain among other problems on January 17, 2022,  but similarly *does not* assert any GBS at that time. <u>See</u> Pet. ¶¶ 18-19.  Rather, the petition alleges that Ms. Mazzone was

---

[3] Exhibit 17 is the timesheet for the attorneys and paralegals who represented Ms. Mazzone.  Future references to dates of her attorneys' activities are based upon information in Exhibit 17.

evaluated for and diagnosed with GBS, (only) in connection with her third hospitalization at the *end* of January 2022.  See Pet. ¶ 21.  The petition also asserts that Ms. Mazzone continues to suffer from GBS.  See Pet. ¶ 39.

The petition asserts that Ms. Mazzone's "injury is causally related to an adverse reaction to a vaccination."  Pet. ¶ 40.  The petition did not claim that Ms. Mazzone suffered an on-Table injury.  There is no indication in any time entry that an attorney attempted to consult an expert before filing the petition.[4]

### C.        Completion of Entitlement Phase

The Secretary contested entitlement.  Resp't's Rep., filed Dec. 7, 2023.  The Secretary argued that Ms. Mazzone's petition did not set forth an on-Table GBS claim, as the onset of her symptoms was approximately 55 days after she received the flu vaccine.  Resp't's Rep. at 6-7.  Respondent further noted that Ms. Mazzone had not presented an expert report, and her treating doctors attributed her GBS to her COVID-19 infection.  Id. at 8-9.

To discuss the Secretary's arguments against compensation, a status conference was held on February 8, 2024.  Ms. Mazzone's counsel was asked whether there was a valid on-Table claim.  Ms. Huff said yes, because the onset of GBS was 48 days after vaccination.  This explanation made little sense because the Secretary has associated the flu vaccine with GBS when the GBS develops within 3-42 days of flu vaccination.  42 C.F.R. § 100.3(a)¶ XIV.D.  The Secretary, in turn, argued that the onset was actually 55 days.  Thus, even if Ms. Huff's interpretation of the evidence were correct, Ms. Mazzone could not prevail upon an on-Table claim.  At Ms. Huff's request, the parties were given an opportunity to resolve the case informally.

The parties were unable to resolve the case informally.  Pet'r's Status Rep., filed March 8, 2024.  Around this time, Attorney Huff began investigating the times for which an inference of causation is medically acceptable.  See time entries for Mar. 21, 2024; Mar. 26, 2024; Apr. 03, 2024.

In the ensuing status conference, Ms. Mazzone stated that she planned to obtain a report from an expert.  When asked whether the petitioner's expert would address the COVID-19 infection as a potential alternative cause, Ms. Huff said yes, because the COVID-19 infection is the elephant in the room.  To guide the preparation of reports from experts, a set of expert instructions was issued in draft form, and the parties were allowed to comment.  The parties did not raise any objections or concerns.  Order, issued April 5, 2024.  Despite this guidance, Ms. Mazzone did not submit a report from an expert.  She sought dismissal of her case voluntarily.

---

[4] Because Ms. Mazzone received the allegedly causal flu vaccine on November 30, 2021, the three-year statute of limitations was not close to expiring.  See 42 U.S.C. § 300aa–16.

Pet'r's Mot., filed July 1, 2024.  Ms. Mazzone did not receive compensation.  2024 WL 3825581.

### D.    Attorneys' Fees and Costs

After judgment entered, Ms. Mazzone was directed to present arguments regarding reasonable basis in conjunction with any request for attorneys' fees and costs.  Order, issued Aug. 26, 2024.  Despite this instruction, Ms. Mazzone's initial motion did not present any argument as to why the claim in her petition was supported by reasonable basis.  Thus, the motion was struck.  Order, issued Nov. 20, 2024.

Ms. Mazzone requests an award of attorneys' fees and costs via the pending motion, which was filed on December 11, 2024 ("Pet'r's Mot.").  She requests $73,356.00 in attorneys' fees and $3,433.83 in attorneys' costs.  Id. at 12.  Ms. Mazzone generally argues that reasonable basis supports her claim.  She goes so far as to assert that "Petitioner would argue that she had reasonable basis to pursue either an on-table or an off-table claim."  Pet'r's Mot. at 8.

With respect to onset, Ms. Mazzone asserted that the onset of her Guillain-Barré syndrome was 36 days after vaccination, when she became increasingly weak and fell.  Pet'r's Mot., citing Exhibit 5 at 546-50.  Thus, according to this argument, Ms. Mazzone had a valid claim for an on-Table injury, (even though the petition did not assert it).  Ms. Mazzone alternatively argued that onset was either January 17, 2022, or January 24, 2022, which are 48 days and 55 days after vaccination respectively.  She cites cases to further contend that an interval of up to 55 days is medically appropriate to infer causation.  With respect to alternative causation, Ms. Mazzone argued that because the Secretary bears the burden of proving alternative causation, the Secretary's "alternative cause argument has no bearing on whether Petitioner had a reasonable basis to file her petition."  Id. at 11.

The Secretary opposed any award of attorneys' fees and costs.  The Secretary argued for a complete denial of fees:

> Petitioner lacks a reasonable basis for her claim.  The objective evidence indicates that petitioner neither began her case with a reasonable basis, nor did one emerge as her case progressed.  For the reasons explained below, petitioner's record evidence does not rise to more than a scintilla of evidence in support of her claim.  Her Fee Motion must be denied.

Resp't's Resp., filed Jan. 8, 2025, at 12.  The Secretary reviewed each of the three elements required to establish causation-in-fact, see Althen v. Sec'y of Health & Hum. Servs., 418 F.3d 1274, 1278 (Fed. Cir. 2005), and argued that Ms. Mazzone did not submit a scintilla of evidence on any prong.  The Secretary also maintained that Ms. Mazzone's "failure to recognize COVID-19 as the likely cause of her GBS before reviewing respondent's Rule 4(c) Report does not confer reasonable basis to her claim."  Id. at 16.[5]

---

[5] In accord with the Secretary's practice, the Secretary did not interpose any objection to the amount of attorneys' fees and costs requested.

Ms. Mazzone defended her request for attorneys' fees and costs.  She argued that any of the three proposed onset dates were medically acceptable.  Pet'r's Reply, filed Jan. 21, 2025, at 2.  With respect to the Secretary's argument that she did not present a medical theory, Ms. Mazzone argued that the Secretary's "entire argument here does not take the timing of this case into account."  Id. at 3.  She also continued to dispute whether she was required to address alternative causation as part of reasonable basis.  Id. at 3-4.  Ms. Mazzone also cited Dr. Jadhaw's note that Ms. Mazzone's "GBS possibly 2/2 [secondary to] flu shot."  Id. at 4, citing Exhibit 1 at 893.  Ms. Mazzone maintains that she could not have known, "prior to consulting with an expert, that she could not prevail in this case.  However, this attributes expertise in the area of neurology onto Petitioner and counsel, something that is not required under this program."  Id. at 3.

With the submission of the reply, the case is ready for adjudication.  The analysis is contained in two separate parts.  The first part addresses whether Ms. Mazzone should receive any attorneys' fees and costs.  Because the answer to that analysis is yes, the second part analyzes the amount of attorneys' fees and costs that is reasonable.

## III.    Analysis Part One: Eligibility for Attorneys' Fees and Costs

The first part of the analysis is to determine whether Ms. Mazzone should receive any attorneys' fees and costs.  This analysis is contained in three sections.  Section A sets forth the standards for determining whether reasonable basis supports the claims in a petition.  Section B considers whether Ms. Mazzone met her burden to show reasonable basis.  Finally, Section C resolves whether Ms. Mazzone should be awarded her reasonable attorneys' fees and costs as a matter of discretion.

### A.    Standards for Adjudication regarding Reasonable Basis

To be entitled to compensation, petitioners must establish five elements, which are found in 42 U.S.C. § 300aa–11(c)(1)(A)-(E).  When petitioners establish all five elements with preponderant evidence (and respondent does not establish an alternative factor explaining the medical disorder), petitioners are entitled to receive compensation.  42 U.S.C. § 300aa–13.  One type of compensation successful petitioners receive is an award of reasonable attorneys' fees and costs.  42 U.S.C. § 300aa–15(e).

By way of contrast, petitioners who did not establish entitlement are not awarded attorneys' fees and costs automatically.  The Vaccine Act grants special masters discretion to award attorneys' fees and costs upon a showing of two items: "that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought."  42 U.S.C. § 300aa–15(e).[6]  As the fee applicant, Ms. Mazzone bears the burden of demonstrating reasonable basis.  McKellar v. Sec'y of Health & Hum. Servs., 101 Fed. Cl. 297, 305 (2011).

It is well established that the standard of establishing reasonable basis is lower than a preponderance of the evidence.  The Federal Circuit stated: "more than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a special master to find

---

[6] Here, as in most cases, the Secretary has not argued that Ms. Mazzone lacked good faith.

reasonable basis." Cottingham v. Sec'y of Health & Hum. Servs., 971 F.3d 1337, 1346 (Fed. Cir. 2020). However, the Federal Circuit did not define a "scintilla." Petitioners meet their evidentiary burden with "objective evidence." Id. at 1344. In categorizing medical records as objective evidence, the Federal Circuit stated, "[m]edical records can support causation even where the records provide only circumstantial evidence of causation." Id. at 1346. Finally, the Federal Circuit in Cottingham specified that "we make no determination on the weight of the objective evidence in the record or whether that evidence establishes reasonable basis, for these are factual findings for the Special Master and not this court." Id. at 1347.

As to what must potentially be shown with a scintilla of evidence, the Federal Circuit has offered some guidance. The same five elements necessary to establish causation can be considered in determining whether a petition was supported by a reasonable basis. Cottingham, 971 F.3d at 1345-46.[7] In Cottingham, the disputed item concerned causation, which is subparagraph C in section 11(c)(1) of the Vaccine Act.

Furthermore, according to the Court of Federal Claims, the finding of a scintilla does not mandate a finding of reasonable basis. Cottingham v. Sec'y of Health & Hum. Servs., 159 Fed. Cl. 328, 336 (2022) (denying motion for review of decision not to award attorneys' fees and costs), aff'd without op., 2023 WL 7545047 (Fed. Cir. 2023).

In a precedential opinion regarding the reasonable basis standard, the Federal Circuit stated that medical records, affidavits, and sworn testimony all constitute objective evidence that could support reasonable basis. James-Cornelius v. Sec'y of Health & Hum. Servs., 984 F.3d 1374, 1379-81 (Fed. Cir. 2021). The Federal Circuit further clarified that "absence of an express medical opinion on causation is not necessarily dispositive of whether a claim has reasonable basis, especially when the case is in its early stages and counsel may not have had the opportunity to retain qualified experts." Id. at 1379 (citing Cottingham, 971 F.3d at 1346).

More recently, the Federal Circuit held that in assessing whether reasonable basis supports the claims set forth in a petition, a special master may structure the analysis around the Althen prongs. Sheller v. Sec'y of Health & Hum. Servs., 121 F.4th 1301, 1305-07 (Fed. Cir. 2024). In doing so, the special master should recognize that the quantum of evidence for reasonable basis is lower than the quantum of evidence for entitlement. Id. In doing so, the Federal Circuit "caution[ed] against a rigid application of the Althen factors because a rigid application, which requires some quantum of evidence for each Althen factor, could exceed what is required to establish a 'reasonable basis.'" Id.[8]

---

[7] Ms. Mazzone argued that: "Petitioner met all the requirements for reasonable basis including having received a covered vaccine, an onset within a medically acceptable amount of time, and sequelae lasting longer than six months." Pet'r's Reply at 3. This list of required elements is accurate but incomplete.

[8] By way of contrast, petitioners must fulfill all three Althen prongs to receive compensation. W.C. v. Sec'y of Health & Hum. Servs., 704 F.3d 1352, 1358 (Fed. Cir. 2013) ("a petitioner must establish all three prongs of the Althen test").

Although the reasonable basis standard does not set an especially high bar, evaluations of reasonable basis must contain sufficient detail to allow an appellate court to review the reasoning.  Stratton v. Sec'y of Health and Hum. Servs., 138 F.4th 1368, 1378 (Fed. Cir. 2025).

**B.      Evaluation of Reasonable Basis**

With respect to the five statutory elements found in 42 U.S.C. § 300aa–11(c)(1), Ms. Mazzone easily satisfies four of them.  These uncontested elements are (A) receiving a vaccine listed in the Vaccine Injury Table, (B) receiving the vaccine in the United States, (D) suffering the consequence of the injury for more than six months, and (E) not previously collecting compensation.  Thus, the only disputed item is causation, which is in paragraph (C).  A deficiency of proof on causation can justify a finding that a petitioner lacked reasonable basis. See Cottingham, 971 F.3d at 1346 (stating "[b]ecause "causation is a necessary element of a petition," a petitioner "must point to evidence of a causal relationship" to establish reasonable basis" and remanding); Cottingham, 159 Fed. Cl. at 328 (denying a motion for review of decision finding a lack of reasonable basis due to insufficient evidence regarding causation); Chuisano v. United States, 116 Fed. Cl. 276, 288–89 (Fed. Cl. 2014) ("reasonableness may [] come into question if . . . the lack of supporting evidence becomes apparent.").

As to how Ms. Mazzone planned to meet her burden of proof with respect to paragraph C / causation, her petition is not a model of clarity.  The general impression is that the petition did not present an on-Table claim.  In this regard, the lack of an explicit assertion regarding an on-Table claim appears telling.  Furthermore, the petition did not assert that Ms. Mazzone developed GBS within the time recognized on the Table.  Nevertheless, in an attempt to support her request for an award of attorneys' fees and costs, Ms. Mazzone states that "Petitioner would argue that she had reasonable basis to pursue either an *on-table or an off-table claim*."  Pet'r's Mot. at 8.  Because the elements of proof regarding causation differ for an on-Table claim and an off-Table claim, the analysis is taken up in two different sections.

        1.      On-Table Claim

A petitioner establishes a presumption of causation by showing that she

> sustained . . .  any illness . . . set forth in the Vaccine Injury Table
> in association with [a] vaccine ... and the first symptom or
> manifestation of the onset . . . any such illness . . . occurred within
> the time period after vaccine administration set forth in the
> Vaccine Injury Table.

42 U.S.C. § 300aa-11(c)(1)(C)(i).  Here, the evidence shows that Ms. Mazzone received a flu vaccine and developed GBS.  The Vaccine Injury Table, in turn, associates the flu vaccine with GBS when "the first symptom or manifestation of the onset" of the GBS occurs within 3-42 days.  42 C.F.R§ 100.3(a)¶ XIV.D.

The question becomes whether there was a reasonable basis for asserting that Ms. Mazzone's GBS developed within 3-42 days.  The answer is no.  There is not a reasonable basis for asserting that Ms. Mazzone's GBS developed within 3-42 days.

9

As a preliminary matter, it bears discussing that Ms. Mazzone's petition appears not to assert a claim based upon the Table. Most notably, it contains no explicit allegation that Ms. Mazzone suffered a Table injury. In fact, the word "Table" does not appear within the petition at all. Nor does the petition implicitly present an on-Table claim by alleging that Ms. Mazzone developed GBS within the 3-42 day Table, as discussed more below. Further, there was no request for referral to the Special Processing Unit of the Office of Special Masters.[9] The Secretary, too, did not view the petition as asserting an on-Table claim. See Resp't's Rep. at 6 ("petitioner does not allege a Table GBS injury"). Thus, it is highly doubtful that Ms. Mazzone's petition "sets forth" the claim of an on-Table injury. See 42 U.S.C. § 300aa-15(e). If the petition did not set forth the claim of an on-Table injury, then the analysis could end. Nevertheless, to demonstrate all of Ms. Mazzone's evidence and arguments have been considered, this section will assume for sake of argument that the petition does (implicitly) assert an on-Table claim.

Asserting a claim is not the equivalent of establishing a reasonable basis for the claim. Otherwise, the reasonable basis standard, which Congress placed in section 15(e) of the Vaccine Act, would be meaningless. After the Federal Circuit's opinion in Simmons, it is clear that reasonable basis is an "objective" test, meaning one evaluated based upon evidence. See Harville v. Sec'y of Health and Hum. Servs., No. 21-1893, 2025 WL 1806434, at *6-7 (June 5, 2025) (finding no reasonable basis for an on-Table claim).

In determining whether to award compensation, special masters are expected to base opinions upon medical records or medical opinion. 42 U.S.C. § 300aa-13(a). In the context of determining whether a petitioner is entitled to compensation, when a petitioner claims to have suffered a Table injury, a petitioner must establish with preponderant evidence that the vaccinee suffered the injury using medical records or the statement from an expert. See Harrington v. Sec'y of Health and Hum. Servs., 139 Fed. Cl. 465, 469 (2018) (denying motion for review and ruling that the special masters correctly concluded that petitioner failed to establish that he suffered from GBS); Keith v. Sec'y of Health and Hum. Servs., 55 Fed. Cl. 791, 797 (2003). Although both Harrington and Keith were decided in the context of a claim for entitlement, the basic analysis guides an assessment of reasonable basis, which requires a lower level of proof. The difference between entitlement to compensation and eligibility for attorneys' fees concerns the burden of proof, not the methods of proof. See Cottingham, 971 F.3d at 1346.

On the topic of whether Ms. Mazzone developed GBS within 3-42 days of her flu vaccination, there is a dearth of evidence. For the category of "medical opinion," Ms. Mazzone never submitted the report of any expert, presenting any opinion. Thus, the evidence, if it is to be found, would be contained in the "medical records."[10]

Ms. Mazzone has not cited any medical records that support her assertion that she developed GBS within 3-42 days of the vaccination. Ms. Mazzone contended: "Petitioner

---

[9] Although the case was assigned to the special processing unit, Ms. Mazzone has not argued that this action contributes to her arguments regarding reasonable basis.

[10] Special masters also should consider affidavits when the affiant is competent to testify about the matters contained in the affidavit. James-Cornelius, 984 F.3d at 1379-81.

argued that onset occurred at 36 post-vaccination, on January 5, 2022, when Petitioner became increasingly weak and fell ill. Ex. 5 at 546-50." Pet'r's Mot. at 7. Later, Ms. Mazzone similarly stated: "Petitioner has maintained that the medical records support a finding of onset within 36 days of vaccination. Ex. 5 at 546-50." Id. at 8.[11] Thus, according to way Ms. Mazzone has argued her motion for attorneys' fees, any basis for the claim that she suffered GBS on January 5, 2022, will be found within pages 546-50 of Exhibit 5.

The medical record found on those pages reflects Ms. Mazzone's appearance at an emergency room on January 5, 2022. The chief complaint includes "shortness of breath" in the context of testing positive at home for COVID-19. Exhibit 5 at 546. In the review of systems, Ms. Mazzone was negative for, among other conditions, "numbness." Id. at 547. As part of the neurologic examination, the doctor determined that Ms. Mazzone had "No sensory deficit," and "No weakness." Id. at 548. Likewise, her coordination and gait were "normal." Id. After receiving laboratory studies, Ms. Mazzone was discharged home. There were three diagnoses listed: "1. Coronavirus Covid-19 disease" "2. Shortness of Breath," and "3. Fever." Id. at 550.

Ms. Mazzone has not explained how this presentation is consistent with a diagnosis of GBS. To start with the bottom line, the doctor who treated her in the emergency room did not diagnose GBS and, instead, discharged her home. Exhibit 5 at 550. Ms. Mazzone cannot point to a doctor's statement that on January 5, 2022, she suffered from GBS. Moreover, in the undersigned's experience, the lack of numbness, the lack of sensory deficits, the lack of weakness, the normal coordination, and the normal gait make the diagnosis of GBS unlikely. Similarly, the doctor's determination that Ms. Mazzone could be discharged from the emergency room seems inconsistent with GBS, which often declines abruptly.

In short, there is so little evidence supporting the contention that Ms. Mazzone experienced GBS on January 5, 2022, that Ms. Mazzone's argument to gain her eligibility for attorneys' fees appears not grounded in good faith. Therefore, the arguing attorney's credibility is reduced.

###### 2.      Off-Table Claim

As an alternative to an on-Table claim, a petitioner can pursue an off-Table claim. 42 U.S.C. § 300aa-11(c)(1)(C)(ii)(I); Moberly v. Sec'y of Health and Hum. Servs., 592 F.3d 1315, 1321 (Fed. Cir. 2010). Off-Table claims are also known as "causation-in-fact" claims. The most natural reading of Ms. Mazzone's petition is that she was alleging that the flu vaccine was the cause-in-fact of her GBS.

Petitioners establish causation-in-fact by meeting the three prongs set out in Althen v. Sec'y of Health and Hum. Servs., 418 F.3d 1274 (Fed. Cir. 2005). These are: "(1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a

---

[11] On both pages 7 and 8, Ms. Mazzone used a verb's past tense: she "argued" and she "maintained" the onset of her GBS as 36 days after vaccination. However, it is not clear when before her pending motion seeking attorneys' fees that she contended that the onset was 36 days after vaccination.

11

proximate temporal relationship between vaccination and injury." Id. at 1278.  In considering whether a petitioner has shown that a reasonable basis supports the claims set forth in a petition, special masters may structure the analysis around the Althen prongs.  However, the Federal Circuit has "caution[ed] against a rigid application of the Althen factors because a rigid application, which requires some quantum for each Althen factor, could exceed what is required to establish 'reasonable basis.'"  Sheller, 121 F.4th at 1307.  The level of proof for reasonable basis remains lower than the proof required for entitlement.

Here, Ms. Mazzone argues that reasonable basis supports her claim based upon two points.  The first point is based upon rulings in other cases.  The second point is based upon a statement from a treating doctor.

Rulings in Other Cases.  Based upon Sheller, Ms. Mazzone seems to argue that once special masters accept a specific combination of vaccine and injury, other future petitioners are not required to submit evidence regarding how a vaccine can cause an injury.  See Pet'r's Br. at 9.  Along this line, Ms. Mazzone cites three cases in which a special master credited the opinion of a doctor retained by the petitioner regarding the appropriate interval.  These three cases are: Pierson v. Sec'y of Health & Hum. Servs., No. 17-1136V, 2022 WL 322836, at *32 (Fed. Cl. Spec. Mstr. Jan. 19, 2022); Spayde v. Sec'y of Health & Hum. Servs., No. 16-1499V, 2021 WL 686682, at *18 (Fed. Cl. Spec. Mstr. Jan. 27, 2021); Barone v. Sec'y of Health & Hum. Servs., No. 11-707V, 2014 WL 6834557, at *13 (Fed. Cl. Spec. Mstr. Nov. 12, 2014).[12]  They can be summarized:

| Name | Vaccine | Injury | Pet'r's Expert | Theory | Latency | Comments |
|---|---|---|---|---|---|---|
| Barone | Flu | GBS | Dr. Tornatore | Molecular mimicry | 6 weeks | Respondent did not present an expert. |
| Spayde | Flu | GBS | Dr. Forsyth (treater) & Dr. Alkaitis | Molecular mimicry | 49-60 days | Respondent's expert was contradictory on onset. |
| Pierson | Prevnar | GBS | Dr. Steinman | Molecular mimicry | Within 56 days | Dr. Steinman relied upon Schoenberger |

Before the Federal Circuit's opinion in Sheller, the Federal Circuit had stated that special masters should look to "objective" evidence supporting a petitioner's claim.  Simmons v. Sec'y of Health & Hum. Servs., 875 F.3d 632, 636 (Fed. Cir. 2017).  Sheller found that petitioner's failure to offer evidence in the form of an expert's report was excusable because of unusual circumstances in which the expert's causal theory was being reviewed by appellate authorities

---

[12] Ms. Mazzone cites a fourth case, Osorio v. Sec'y of Health & Hum. Servs., No. 18-1835V, 2021 WL 3370218, at *7 (Fed. Cl. Spec. Mstr. July 9, 2021), but in Osorio the special master did not find entitlement.

when Mr. Sheller was developing his claim.  Sheller, 121 F.4th at 1308.  Whether Sheller should be limited to situations with similar unusual circumstances is not clear.

Determining how broadly or how narrowly Sheller should be interpreted is not necessary to resolve Ms. Mazzone's pending motion for attorneys' fees and costs.  As mentioned previously, Ms. Mazzone's argument regarding reasonable basis rests upon more than similar cases.

Treating Doctor.  In the entitlement context, a statement from a treating doctor merits careful consideration.  Capizzano v. Sec'y of Health & Hum. Servs., 440 F.3d 1317, 1327 (Fed. Cir. 2006).  So, too, in determining whether reasonable basis supports the claim set forth in a petition, a special master should weigh a statement from a treating doctor.

To shore up the petition's claim that the flu vaccine caused her GBS, Ms. Mazzone relies upon a medical record from Dr. Jadhaw who conducted a telehealth visit with Ms. Mazzone on May 9, 2022.  Pet'r's Mot. at 11; see also Pet'r's Reply at 4 (citing same record).  Dr. Jadhaw's "History of Present Illness" states that Ms. Mazzone was "admitted for GBS possibly 2/2 [secondary to] flu shot.  Post COVID-19 with quadriparesis and myopathy/neuropathy."  Exhibit 1 at 893.  Dr. Jadhaw's assessment states, in relevant part, that Ms. Mazzone has a history of "Guillain Barré syndrome – recovering with home physical therapy/OT."  Id. at 896 (capitalization changed without notation).

Here, Dr. Jadhaw's statement that the flu vaccine possibly caused Ms. Mazzone's GBS constitutes at least a scintilla of evidence.  This statement that the vaccine possibly caused the GBS implies that that flu vaccine can cause GBS.  Caves v. Sec'y of Health & Hum. Servs., 100 Fed. Cl. 119, 136 (2010), aff'd without opinion, 463 Fed. App'x 932 (Fed. Cir. 2012).  Thus, Dr. Jadhaw's statement indirectly supports Ms. Mazzone's position regarding Althen prong one, making her reliance on cases such as Barone somewhat superfluous.

In the evaluation of Dr. Jadhaw's statement, the context matters.  Dr. Jadhaw's statement is unlikely to carry Ms. Mazzone's burden during the entitlement phase when the burden of proof is a preponderance of the evidence.  However, when the burden of proof is lower, Dr. Jadhaw's statement is a reason for finding Ms. Mazzone had a reasonable basis for alleging the flu vaccine caused her GBS.

Accordingly, because Ms. Mazzone acted in good faith and demonstrated reasonable basis for her claim, Ms. Mazzone is eligible for an award of attorneys' fees and costs.

## C.    Discretionary Determination

The finding of eligibility does not necessarily end the inquiry as special masters enjoy discretion in whether to award attorneys' fees and costs even when a claim was supported by reasonable basis and filed in good faith.  James Cornelius, 984 F.3d at 1379.  Special masters have not exercised the authority Congress extended to them, but special masters may develop

13

"novel procedures governing litigation under the Vaccine Act." Sword v. United States, 44 Fed. Cl. 183, 191 (1999).[13]

This case comes close to being one in which a discretionary denial of attorneys' fees and costs could be appropriate. As explained below, the evidentiary support for Ms. Mazzone's claim fell so far short of what would be required to obtain compensation that the pursuit of the case was questionable.

Ms. Mazzone's case shows how fees can accumulate in a case in which a petitioner did not have persuasive evidence that a vaccine caused an injury. To review, within about one month of the initial consultation, Ms. Mazzone provided more than 900 pages of records, which are almost certainly the records from Kaiser, and a paralegal spent about three hours reviewing them. Entry for May 26, 2022. Due to the way Kaiser operates, nearly all records for one of their insured people are found in records produced by Kaiser. For example, the Kaiser set of records contain the following: (a) proof of the vaccination on November 30, 2021, (b) medical records from her treatment for a COVID-19 infection in early January 2022, (c) medical records for treatment for back pain in mid-January 2022, (d) medical records from the hospitalization for GBS at the end of January 2022, which includes statements from Dr. Neeley and Dr. El-Isa, and (e) a medical record for a follow up appointment with Dr. Jadhaw in May 2022.

In other words, Kaiser records largely told Ms. Mazzone's story and contained evidence of both onset concerns and a potential alternative cause. Attorney Huff reviewed these medical records and recognized "hurdles" might prevent Ms. Mazzone from receiving compensation. Entries for May 31 and June 1, 2022. Assuming that "hurdles" included Ms. Mazzone's COVID-19 infection, Attorney Huff's observation was insightful.[14] However, there is no evidence that Attorney Huff or any other attorney acted on this concern. Instead, after June 1, 2022, paralegals at the law firm tracked down and reviewed medical records. The next five and a half pages in the timesheets contain approximately 100 entries from paralegals and no entries from attorneys.

This flow of paralegal activity is interrupted by a single entry on November 3, 2022, during which a managing attorney "consult[ed] with lead counsel regarding medical record analysis, alternative causation" for 0.3 hours. There is no evidence that counsel meaningfully investigated or attempted to resolve the alternative causation issue. Instead, paralegals continued to get more medical records as then counsel of record, Attorney Abramson, drafted the petition. After the petition was filed, more time was devoted to obtaining medical records from a rehabilitation facility where Ms. Mazzone was treated, Westwood Post Acute.

In July 2023, Attorney Huff replaced Attorney Abramson as counsel of record. At the end of August 2023, Attorney Huff reviewed the summaries of medical records and "evaluate[d]

---

[13] Although the caption of the published opinion in Sword identifies the defendant as the "United States," the opinion is denial of a motion for review of a special master's decision.

[14] The inference that Attorney Huff recognized the COVID-19 infection as a potential hurdle seems fair because she later described the COVID-19 infection as the "elephant in the room."

14

potential issues respondent might raise [and] develop[d] litigation strategy."  The Secretary opposed compensation, raising (a) the latency between the vaccination and the onset of GBS and (b) the intervening COVID-19 infection.  Resp't's Rep. at 6-9.

Only around March 25, 2024 (or about 22 months after the receipt and review of the Kaiser records), attorneys started researching whether the timeframe was medically appropriate and how a COVID-19 infection could constitute an alternative cause.  Attorney Huff attempted to obtain a favorable expert report in April and May 2024.  This search was not successful.  Rather than submit a report from an expert, Ms. Mazzone moved to dismiss her case.

In short, Attorney Huff and other attorneys at the law identified potentially significant "hurdles" in May 2022 yet did not meaningfully address them for nearly two years.  Then, when required to confront those hurdles, Ms. Mazzone and Attorney Huff folded their case, meaning Ms. Mazzone received no compensation.

It bears emphasizing that the paralegals do not appear to have done anything wrong.  Presumably, the firm delegates paralegals the task of obtaining medical records and the paralegals dutifully followed these instructions.  It also bears noting that after Attorney Huff's search for an expert did not produce an opinion helpful to Ms. Mazzone's case, the case wrapped up quickly.  Once the case appeared unsustainable, neither Attorney Huff nor Ms. Mazzone prolonged the case unreasonably.

The more basic question is why the attorneys waited approximately two years before addressing the hurdles Attorney Huff identified.  While the Vaccine Act and the Vaccine Rules require petitioners to obtain all medical records, nothing in the Vaccine Act or the Vaccine Rules precludes an attorney from assessing relevant medical records as other medical records are being obtained.

If Attorney Huff and her fellow attorneys had undertaken the same research in June 2022 (when the problems were identified) that they ultimately undertook in April and May 2024, the December 2022 petition might never have been filed.  After all, Ms. Mazzone dismissed her case because of an inability to develop sufficient preponderant evidence to prove her case; not because the Secretary later offered contrary evidence that undermined an otherwise viable claim.  The same observation applies to November 2022, when counsel discussed the record and causation issues.

Alternatively, if Attorney Huff and her fellow attorneys had undertaken the same research before filing, maybe the petition would have been filed solely as a vehicle for reimbursement of attorneys' fees.  See Lamar v. Sec'y of Health & Hum. Servs., No. 99-583V, 2008 WL 3845165, at *4 n.13 (Fed. Cl. Spec. Mstr. July 30, 2008) (discussing how attorneys can "'gam[e] the system'"); see also Austin v. Sec'y of Health & Hum. Servs., No. 10-362V, 2013 WL 659574, at *10 (Fed. Cl. Spec. Mstr. Jan. 31, 2013) (citing Lamar and stating there is "a tension between supporting the policy behind the award of fees to unsuccessful litigants and discouraging 'gaming the system'"); Kendrick on behalf of C.E.K. v. Sec'y of Health & Hum. Servs., No. 22-639V, 2024 WL 4201451, at *5 (Fed. Cl. Aug. 23, 2024) (citing Lamar and Austin and stating "[a] lack of investigation before the petition is filed may, in some future case, warrant a denial of attorneys' fees despite a finding of reasonable basis").  The concern is not that Ms. Mazzone ultimately lost.  The concern is that counsel recognized potentially

dispositive(s) issues pre-filing, but deferred meaningful investigation of those issues until well after filing.

It is clear that Ms. Mazzone did not develop evidence sufficient for her to receive compensation.  While she may have enough support for reasonable basis, a finding of reasonable basis does not mandate that special masters award reasonable attorneys' fees and costs.  Pursuing a case in which petitioners have been advised that they are unlikely to receive compensation may justify a denial of attorneys' fees and costs on a discretionary basis.  But, in this case, Ms. Mazzone was not informed that litigating her case would be unlikely to result in compensation.  Without this warning, the undersigned is reluctant to deny a reasonable amount of attorneys' fees and costs.

Although Ms. Mazzone is being awarded a reasonable amount of attorneys' fees and costs, the problem of pursuing weak cases merits attention.  Although petitioner's attorneys have an ethical obligation to represent their clients zealously, this ethical principle does not require payment of attorneys' fees and costs.  Perreira v. Sec'y of Health & Hum. Servs., 33 F.3d 1375, 1377 (Fed. Cir. 1994).  Unlike attorneys who represent clients, special masters may be concerned about the entire docket of cases in the Vaccine Program.  Cases that are not likely to result in awards of compensation to petitioners consume Program resources and delay adjudication of more meritorious cases.  Thus, in some future cases, petitioners with reasonable basis may be denied fees on a discretionary basis.  But, as just stated, that future case is not Ms. Mazzone's case.  She is awarded her reasonable amount of attorneys' fees and costs.

## IV.  **Analysis Part Two: Reasonable Amount of Attorneys' Fees and Costs**

In light of the Secretary's lack of objection, the undersigned has reviewed the fee application for its reasonableness.  See McIntosh v. Sec'y of Health & Human Servs., 139 Fed. Cl. 238 (2018). Ms. Mazzone's application is divided into two components: attorneys' fees and attorneys' costs.

### A.  **Reasonable Attorneys' Fees**

The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act.  This is a two-step process.  Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1348 (Fed.  Cir. 2008).  First, a court determines an "initial estimate … by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'"  Id. at 1347-48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)).  Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings.  Id. at 1348.  Here, because the lodestar process yields a reasonable result, no additional adjustments are required.  Instead, the analysis focuses on the elements of the lodestar formula, a reasonable hourly rate and a reasonable number of hours.

#### 1.  Reasonable Hourly Rates

Under the Vaccine Act, special masters, in general, should use the forum (District of Columbia) rate in the lodestar calculation.  Avera, 515 F.3d at 1349.  There is, however, an exception (the so-called Davis County exception) to this general rule when the bulk of the work is done outside the District of Columbia and the attorneys' rates are substantially lower.  Id. 1349

(citing <u>Davis Cty.  Solid Waste Mgmt. and Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency</u>, 169 F.3d 755, 758 (D.C. Cir. 1999)).  In this case, most (or all) the attorneys' work was done outside of the District of Columbia.

The billing records show that different attorneys and various paralegals have charged various rates depending upon the year the work was performed.  Exhibit 17 at 23.  These rates have been awarded previously.  <u>See</u> <u>Palmore v. Sec'y of Health & Human Servs.</u>, No. 22-536V, 2024 WL 3913715 (Fed. Cl. Spec. Mstr. July 8, 2024); <u>Sorge v. Sec'y of Health & Human Servs.</u>, No. 21-1759V, 2024 WL 1511989 (Fed. Cl. Spec. Mstr. Mar. 14, 2024).  Thus, they are accepted as reasonable in this case as well.[15]

### 2.    Reasonable Number of Hours

The second factor in the lodestar formula is a reasonable number of hours.  Reasonable hours are not excessive, redundant, or otherwise unnecessary.  <u>See</u> <u>Saxton v. Sec'y of Health & Human Servs.</u>, 3 F.3d 1517, 1521 (Fed.  Cir. 1993).  The Secretary also did not directly challenge any of the requested hours as unreasonable.

From the starting point that it was reasonable for Attorneys Abramson and Huff to delay efforts to address the "hurdles" in Ms. Mazzone's case for about two years, the course of litigation was, generally, fine.  Although nearly all activities are credited, a few activities are not reasonable in their entirety.

<u>Paralegals Charging for Clerical Activities</u>.  Under various fee-shifting regimes, attorneys may charge for tasks performed by paralegals.  The justification is that the paralegal is stepping in for an attorney and charging a lower hourly rate for work an attorney would otherwise perform.  However, attorneys may not charge for clerical tasks because the attorney's hourly rate reflects overhead expenses, such as employing a secretary.  <u>Missouri v. Jenkins</u>, 491 U.S. 274, 288 n.10 (1989); <u>Bennett v. Dep't of Navy</u>, 699 F.2d 1140, 1145 n.5 (Fed. Cir. 1983); <u>Guy v. Sec'y of Health & Human Servs.</u>, 38 Fed. Cl. 403, 407-08 (1997).

The dichotomy between paralegal activities (billable) and clerical activities (non-billable) is often announced.  However, a general principle to differentiate them is somewhat elusive.  To qualify as a paralegal, a person needs special training and experience.  <u>See</u> <u>Impresa Construzioni Geom. Demenico Garufi v. United States</u>, 100 Fed. Cl. 750, 768 (2011); <u>see also</u> <u>Pressly v. United States</u>, No. 18-1964, 2025 WL 1780947, at *12 (Fed. Cl. May 12, 2025); <u>Pickens v. Sec'y of Health & Hum. Servs.</u>, No. 17-187V, 2020 WL 414442 at *4 (Fed. Cl. Jan. 9, 2020) (denying motion for review of a decision reducing attorneys' fees and stating "legal training is not required to notify the Court that a document is being filed").

Here, on a handful of occasions, paralegals have charged for tasks that do not require special training.  Examples include preparing notices of filing, adding items to a list of exhibits,

---

[15] Although the hourly rates for Ms. Huff and Ms. Abramson are accepted, the undersigned has concerns whether their performance matches the performance of other attorneys who are compensated at similar rates.

and filing documents.  See, e.g., entries for Feb. 14-16, 2023; July 27, 2023; Sep. 11, 2023; Oct. 21, 2024; Dec. 10, 2024.

Excessive Amount of Time.  Counsel "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission."  Hensley v. Eckerhart, 461 U.S. 424, 434 (1983).

Here, again, on a handful of occasions, attorneys charged an amount of time that exceeds the bounds of reasonableness.  See, e.g., entries for June 28-29, 2023; July 23, 2024.  A specific item concerns the relatively large amount of time spent preparing the fee application.  See entries for July 2, 2024-October 21, 2024.  A second item of concern is the briefing regarding reasonable basis.  Although most of the time is credited, the argument that Ms. Mazzone presented a claim based upon the Vaccine Table so greatly lacks merit that compensation is not warranted.  See Minks v. Polaris Industries, Inc., 546 F.3d 1364, 1374 (Fed. Cir. 2008) (ruling trial court did not abuse its discretion in reducing attorneys' fees by half when the plaintiff presented an incoherent damages theory).  But, given that this argument was a relatively small part of the overall submission, the deduction for this item is relatively minimal.

To account for these unreasonable charges, $2,000.00 is removed.  See Fox v. Vice, 563 U.S. 836, 838 (2011) (indicating that trial courts may use "rough justice" in awarding attorneys' fees).

Accordingly, Ms. Mazzone is awarded $71,356.00 in attorneys' fees.

### B.    Costs Incurred

Like attorneys' fees, a request for reimbursement of costs must be reasonable. Perreira v. Sec'y of Health & Human Servs., 27 Fed. Cl. 29, 34 (Fed. Cl. 1992), aff'd, 33 F.3d 1375 (Fed. Cir. 1994).  Ms. Mazzone requests a total of $3,433.83 in attorneys' costs.  Exhibit 18 at 1.  She warrants that she did not incur any costs personally.  Exhibit 19.

These costs are adequately documented and are reasonable.  Thus, they are awarded in full.[16]

### V.    Conclusion

The Vaccine Act permits an award of reasonable attorney's fees and costs. 42 U.S.C. § 300aa-15(e). Accordingly, the undersigned awards attorneys' fees and costs as follows: a lump sum of **$74,789.83** (representing $71,356.00 in attorneys' fees and $3,433.83 in attorneys' costs) to be paid through an ACH deposit to petitioner's counsel's IOLTA account for prompt disbursement.

---

[16] One of the costs was for a neurologist, Jeffrey Allen.  Exhibit 18 at 23.  It is not readily apparent that Dr. Allen's proposed hourly rate is reasonable as Ms. Mazzone did not provide any background material for him or cite any cases involving Dr. Allen.  Thus, future petitioners retaining Dr. Allen would be well-served to submit this information with a fee application.

18

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[17]

**IT IS SO ORDERED**.

s/Christian J. Moran
Christian J. Moran
Special Master

---

[17] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.